UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DONALD F. MURRAY,

                              Plaintiff,

-v-

STATE UNIVERSITY OF NEW YORK,
STATE UNIVERSITY COLLEGE AT
BROCKPORT, *et al.*,

                              Defendants.

DECISION AND ORDER

6:22-CV-6306 CJS(CDH)

---

## INTRODUCTION

This is an action alleging employment-related constitutional violations and age discrimination pursuant to 42 U.S.C. § 1983 and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623 *et seq.*   Donald F. Murray ("Plaintiff"), a tenured faculty member and former wresting coach at the State University of New York ("SUNY") College at Brockport ("SUNY Brockport"), contends that defendants engaged in "a pattern of discriminatory acts" and[, based on allegations that during the Covid-19 lockdown he violated both SUNY and National Collegiate Athletic Association ("NCAA") rules by having in-person wrestling practices,] took "specific action against [him] and the [SUNY Brockport] Wrestling [P]rogram to target [him,] while turning a blind eye to other athletic programs helmed by younger coaching staff that were engaging in similar conduct." Complaint at ¶ 18.  Now before the Court are Plaintiff's Objections (ECF No. 53) to a Decision and Order (ECF No. 52) by the Honorable Colleen D. Holland, United States Magistrate Judge ("Judge Holland), denying Plaintiff's request to depose SUNY Brockport's President, Heidi Macpherson ("Macpherson").  For reasons explained below, Plaintiff's objections are denied.

BACKGROUND

The reader is presumed to be familiar with the facts of this action and the submissions of the parties detailing their discovery dispute, as briefly set forth in Judge Holland's Decision and Order:

> Plaintiff was "a tenured faculty member and Head Wrestling Coach at SUNY Brockport for fifty years[.]" (Dkt. 1 at ¶ 8; *see also* Dkt. 48-4 at 5 ("[Plaintiff] continued his full-time employment as a Professor of Kinesiology at Brockport and remains employed in that capacity to this day."). Plaintiff claims that as far back as 2013, Erick Hart ("Hart"), SUNY Brockport's Athletic Director, made Plaintiff's "age and retirement an issue," due to an "apparent preference for younger coaches." (Dkt. 1 at ¶¶12-15). According to Plaintiff, [in September 2020,] "Hart's attacks culminated in both a University and NCAA investigation" [into Plaintiff's alleged violations of SUNY's Covid-19 safety protocols and NCAA rules.] (*Id.* at ¶ 19). [Plaintiff alleges that] [t]he University investigation . . . began in September 2020, was "initiated upon pretext," and "resulted in full exoneration of [Plaintiff] and the absence of any University disciplinary action." (*Id.* at ¶¶ 20-21).
>
> ***
>
> The NCAA investigation was initiated when "the University 'self-reported' [Plaintiff] and the University Wrestling Program to the NCAA." (*Id.* at ¶ 23). SUNY Brockport allegedly thereafter submitted to the NCAA a list of recommended penalties as part of a summary disposition process, resulting in a "*de facto* termination" of Plaintiff as Head Wrestling Coach by "removing [him] from coaching for three years." (Id. at ¶¶ 24-25; 119-21).
>
> ***
>
> On July 30, 2024, Plaintiff moved to compel supplemental responses to his document demands and to set a date certain for the deposition of [SUNY Brockport] President Macpherson. (Dkt. 36). Magistrate Judge Marian W. Payson, to whom the matter was then referred, entered a Decision and Order on August 1, 2024, concluding that the parties had "not fully exhausted their obligation to meet and confer in good faith prior to seeking Court intervention to resolve the issues raised by the motion" and denying the motion without prejudice. (Dkt. 37).
>
> Judge Payson held an informal, telephonic discovery conference on October 9, 2024, at which these issues were discussed. (See Dkt. 40). The parties disagree about what was said at this conference. Plaintiff maintains that Judge Payson "recommended that the deposition of [Macpherson]

should proceed, in conjunction with Interrogatories to pinpoint the scope of the deposition, and extended discovery deadlines to permit the parties to schedule Interrogatories and the Macpherson Deposition." (Dkt. 46-1 at ¶ 5). Defendants contend that Judge Payson "made suggestions regarding how the parties could resolve the matter, including the use of Interrogatories and a possible brief deposition," but "did not render a decision since no motion was before her." (Dkt 48-4 at 6).

Plaintiff served interrogatories directed to President Macpherson on October 29, 2024. (Dkt. 46-1 at ¶ 6). Defendants served responses on February 19, 2025, signed by President Macpherson. (Dkt. 46-4 at 2-9).

On March 13, 2025, Plaintiff's counsel sent [Judge Holland] a letter detailing the outstanding discovery disputes in this matter. Defense counsel sent a responsive letter. After reviewing these communications, [Judge Holland] instructed Plaintiff to file a formal motion.

Plaintiff filed the [subject motion, to compel both the deposition of Macpherson and the supplementation of Defendants' discovery responses] on March 18, 2025. (Dkt. 46). Defendant filed a response on April 1, 2025 (Dkt. 48), and Plaintiff filed a reply on April 7, 2025 (Dkt. 49).

ECF No. 52 at pp. 2-4.

The dispute over deposing Macpherson involves decisions that were made by SUNY Brockport, on or about September 12, 2020, to suspend Plaintiff from his teaching and coaching duties; to suspend the wrestling team's activities; to cancel two of Plaintiff's wrestling physical education classes; to notify the NCAA of alleged rule violations by the Wrestling Program; and to issue a press release referencing potential violations of Covid-19 policies and NCAA rules by the Wrestling Program.   Plaintiff maintains that Macpherson personally made the decision to take those various actions.  Macpherson's interrogatory responses deny that she personally made any of the decisions, see, ECF No. 46-4 at pp. 4-7, though the deposition testimony of several of her subordinates indicates otherwise, see, e.g., ECF No. 36-7 at pp. 4, 7 (Macpherson made the decision

3

to suspend the wrestling team); 9, 48 (Macpherson issued press release); 56-57 (Macpherson ordered that the NCAA be notified of potential rule violations).

Against this factual background, Plaintiff's application to compel the deposition of Macpherson offered the following reasons for wanting to depose her:

> [T]he Macpherson Deposition would focus on the first topic identified in the Deposition Notice: SUNY Brockport's investigation, suspension, and alternative assignment of plaintiff, formerly SUNY Brockport's Head Wrestling Coach. I also intend to follow up on the Defendants' Response to Interrogatories which revealed that President Macpherson personally edited the press release announcing the suspension of the Wrestling program.
>
> ***
>
> A deposition is appropriate here . . . since President Macpherson was personally involved, unlike the officials in the Lederman and Wyatt cases cited by Defendants.
>
> ***
>
> Deposition testimony by Defendant Erick Hart, Susan Hoffman, Dr. Cathy Houston-Wilson, and Tamara Gouger (see Exhibit 2 hereto, deposition excerpts attached as Exhibits 1-4 to Plaintiff's October 29, 2024 Interrogatories) established that Heidi Macpherson, as SUNY Brockport's President, was directly involved in the September 2020 decision to suspend the SUNY Brockport Wrestling Program, immediately remove Murray from the SUNY Brockport campus, and suspend Murray's teaching and coaching duties in lieu of an alternate off-campus assignment.
>
> SUNY Brockport Athletic Director Erick Hart testified that on or about September 10, 2020, in a TEAMS virtual meeting with the Bringing Brockport Back ("BBB") Committee, including President Macpherson and the Provost (Doc. No. 36-7, Hart Dep. p.43, lines 1-11; p.47, line 8 to p.48, line 6; p.51, line 19 to p.52, line 11), President Macpherson made the decision to suspend SUNY Brockport's Wrestling Program, implemented September 12, 2024 and announced that same day in President Macpherson's campus wide email and press release (Hart Dep. p. 50, lines 12-18; p.53, lines 16-23; p.56, lines 7-20; p.57, lines 3-7).
>
> SUNY Assistant Athletic Director Susan Hoffman testified that President Heidi Macpherson directed her to reach out to the NCAA and report potential COVID violations and NCAA bylaw violations, before the NCAA sent an October 23, 2020 letter to SUNY Brockport (Doc. 36-7 Hoffman

4

Dep. p.25, lines 7-21). Plaintiff's Department Chair, Cathy Houston Wilson, testified (Doc. No 36-7, pp.27-28) that after she received the suspension press release, she and President Macpherson discussed the suspension and the removal of Donald Murray from the campus and his teaching duties.

Tamara Gouger testified that on September 11, 2020, she spoke with President Macpherson to give her a "heads up" about a potential COVID safety violation, and that Ms. Gouger would investigate and follow up with the President (Doc. No. 37-6, p.12, lines 13-21). Defendant Kathryn Wilson, retired SUNY Brockport Vice President for Student Affairs and Enrollment Management, testified that the suspension and President Macpherson's September 12, 2020 email and press release emanated from meetings of the BBB Committee and President Macpherson's Cabinet.

The information sought via the Macpherson Deposition fits squarely within the exception to the general rule articulated in *Lederman* [*v. NYC Dep't of Parks & Recreation*, 731 F.3d 199, 203 (2d Cir. 2013) ("Lederman")] allowing deposition of high-ranking officials where a party establishes: "that the official has unique first-hand knowledge related to the litigated claims" or "that the necessary information cannot be obtained through other, less burdensome or intrusive means." *Lederman, supra*, 731 F. 3d at 303. As noted above, several officials testified, under oath, that the decision to suspend the Wrestling program was made by President Macpherson, in the context of a BBB Committee meeting attended by Macpherson.

ECF No. 46-1 at pp. 3-5 (paragraph numbering omitted).

On July 8, 2025, Judge Holland issued a Decision and Order (ECF No. 52), granting in part, and denying in part, Plaintiff's Motion to Compel. As relevant to Plaintiff's Objections, Judge Holland denied the portion of the motion that sought to compel the deposition of Macpherson, stating, in pertinent part:

Generally, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs to the case[.]" Fed. R. Civ. P. 26(b)(1). "Relevance for discovery purposes is an extremely broad concept which has been construed to encompass any matter that bears on, or reasonably could lead to, other matters that could bear on, any issue that is or may be in the case." *Mitchell v. Fishbein*, 227 F.R.D. 239, 248 (S.D.N.Y. 2005) (quotation and alteration

omitted). "Though the burden of demonstrating relevance is on the party seeking discovery, if a party objects to discovery requests, that party bears the burden of showing why discovery should be denied[.]" *Shiber v. Centerview Partners LLC*, No. 21-CV-3649 (ER), 2023 WL 3071554, at *2 (S.D.N.Y. Apr. 25, 2023) (citation omitted).

"Given the broad scope of discovery in federal civil litigation, 'it is exceedingly difficult to demonstrate an appropriate basis for an order barring the taking of a deposition.'" *Kamps v. Fried, Frank, Harris, Shriver & Jacobson L.L.P.*, No. 09 CIV 10392 RMB, 2010 WL 5158183, at *3 (S.D.N.Y. Dec. 9, 2010) (quoting *Naftchi v. New York Univ. Med. Ctr.*, 172 F.R.D. 130, 132 (S.D.N.Y. 1997)). "A witness ordinarily cannot escape examination by denying knowledge of any relevant facts, since the party seeking to take the deposition is entitled to test the witness's lack of knowledge." *Id.* (quoting 8A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2037 (3d ed. 2017)).

However, a different rule applies where a party seeks to depose a "highranking government official." *Lederman v. N.Y.C. Dep't of Parks & Recreation*, 731 F.3d 199, 203 (2d Cir. 2013). Such officials "are generally shielded from depositions because they have greater duties and time constraints than other witnesses," and if courts did not impose appropriate limitations, "such officials would spend an inordinate amount of time tending to pending litigation." *Id.* (quotations omitted). Accordingly, "to depose a high-ranking government official, a party must demonstrate exceptional circumstances justifying the deposition—for example, that the official has unique first-hand knowledge related to the litigated claims or that the necessary information cannot be obtained through other, less burdensome or intrusive means." *Id.* (emphasis added).

The *Lederman* standard places a "heavy burden" on the party seeking to depose a high-ranking government official. *Chin v. N.Y.C. Dep't of Correction*, 741 F. Supp. 3d 18, 25 (E.D.N.Y. 2024). Such parties generally must demonstrate that the individual they seek to depose has "unique personal information that is essential to their case or that the information they seek cannot be obtained from a less burdensome source." *Id.* (denying motion to compel where the plaintiff "failed to show why any lingering questions could not be resolved through other discovery mechanisms"); *see also Moriah v. Bank of China Ltd.*, 72 F. Supp. 3d 437, 440 (S.D.N.Y. 2014)

6

("Plaintiffs cannot demonstrate exceptional circumstances that would allow a deposition of [the subpoenaed government official] because they cannot establish that [the subpoenaed government official] has unique first-hand knowledge related in any manner to this litigation.") (quotation omitted).

Here, Plaintiff does not contest that President Macpherson qualifies as a highranking government official and that the *Lederman* standard applies. Plaintiff argues that he has satisfied the *Lederman* standard because President Macpherson was "personally involved" in the actions of which he complains. (Dkt. 46-1 at ¶ 15). More specifically, Plaintiff contends that deposition testimony by "Defendant Erick Hart, Susan Hoffman, Dr. Cathy Houston-Wilson, and Tamara Gouger . . . established that Heidi Macpherson, as SUNY Brockport's President, was directly involved in the September 2020 decision to suspend the SUNY Brockport Wrestling Program, immediately remove Murray from the SUNY Brockport campus, and suspend Murray's teaching and coaching duties in lieu of an alternate off-campus assignment." (Id. at ¶ 17). Plaintiff further asserts that any inconvenience to President Macpherson can be minimized because her "deposition can be conducted virtually and should last about an hour." (Id. at ¶ 16).

Defendants argue that Plaintiff has not satisfied the applicable standard, and that mere involvement by President Macpherson in the relevant events is insufficient to warrant her deposition. (Dkt. 48-4 at 17). They have submitted a declaration from President Macpherson in which she states under penalty of perjury that she has "no unique knowledge or information regarding any of the issues surrounding this lawsuit" and "did not personally make the decision to suspend the wrestling team for possible COVID rules violations in September of 2020." (Dkt. 48-2 at ¶¶ 17, 19).

As noted above, "the party seeking to take the deposition[ ] bears the burden of demonstrating the exceptional circumstances that justify the high-level deposition." *Loc. 2507, Uniformed EMTs, Paramedics & Fire Inspectors v. City of N.Y.*, __ F. Supp. 3d __, No. 22 CIV. 10336 (AT) (GWG), 2025 WL 1719210, at *1 (S.D.N.Y. June 20, 2025) (quotations omitted). The Court finds that Plaintiff has not satisfied that burden here. At best, the evidence cited by Plaintiff creates an issue of fact as to whether President Macpherson was the ultimate decision-maker with respect to the suspension of the wrestling team in September 2020. But even assuming that was the case, "[t]he fact that [a high-ranking government official] was

the ultimate decision-maker regarding the alleged policy is not a sufficiently exceptional circumstance to compel a deposition." *Boggs v. Town of Riverhead*, No. 2:17-CV-05411 ADS SIL, 2020 WL 1929076, at *3 (E.D.N.Y. Apr. 20, 2020); *see also Local 2507*, 2025 WL 1719210, at *2 ("It is also of no moment that the Commissioner was the ultimate decision-maker responsible for decisions that may be relevant here, such as assigning the Fire Cadets to EMS positions."). The relevant inquiry is whether the necessary information is "readily discernable from other sources." *Local 2507*, 2025 WL 1719210, at *2. Here, the evidence cited by Plaintiff confirms that other SUNY Brockport personnel were involved in the meetings and discussions that led to the suspension of the wrestling team and the report to the NCAA. Plaintiff has not demonstrated that the information he seeks cannot be obtained from these sources, and thus he has not demonstrated exceptional circumstances as required by *Lederman*.

The Court's resolution of this matter is not bound by the informal discovery conference held by Judge Payson in October 2024. Such informal discovery conferences serve as a case management tool whereby the Court may assist the parties in resolving a dispute without the need for formal motion practice. But they are not a substitute for formal motion practice, and Judge Payson did not issue any order or binding ruling as a result of that conference. The purpose of requiring a formal motion is to ensure that the Court has a full and complete record and understanding of all issues before making an authoritative ruling. On the full and complete record, the Court concludes that Plaintiff has not demonstrated that a deposition of President Macpherson is warranted in this matter. Accordingly, his request for an order compelling President Macpherson's deposition is denied.

ECF No. 52 at pp. 4-8.

Plaintiff filed timely objections to Judge Holland's Decision and Order (ECF No. 53), objecting only to the ruling denying the request to depose Macpherson.   On that point, Plaintiff contends that Judge Holland "erred as a matter of law by misconstruing controlling Second Circuit case law governing exceptions to the rule discouraging depositions of high-ranking government officials." ECF No. 53-1 at p. 3.   More particularly, Plaintiff alleges that Judge Holland's ruling is erroneous for the following reasons: 1) it

erroneously "adopt[s] Defendants' disingenuous mischaracterization of Magistrate Judge Marion Payson's October 9, 2024, determination [sic]";  2) it ignores evidence that Macpherson personally made the decision to suspend the wrestling team and Plaintiff, contrary to what Defendants claim; 3) it misapplied *Lederman*, by erroneously requiring Plaintiff to show *both* that Macpherson has "unique first-hand knowledge related to the litigated claims" *and* that such information "cannot be obtained through other, less burdensome means," when the law requires only that he show *either* of those things; 4) it misconstrued Plaintiff's argument as being that the deposition was justified based on Macpherson's "mere involvement" in the decision to suspend Plaintiff and the wrestling program, when Plaintiff actually maintains that Macpherson has unique first-hand information important to Plaintiff's claims;[1] and 5) it erroneously relied on distinguishable case authority.

Particularly regarding Macpherson's alleged unique first-hand knowledge about the case, Plaintiff states:

> Murray asserts more than President Macpherson's "mere involvement" (Order, p. 7) – the evidence, particularly Mr. Hart's testimony, is that but for President Macpherson, there was no impetus to take a hard stand against Murray, and to use Murray and the Wrestling Team as an example to showcase SUNY Brockport's tough enforcement of COVID-19 rules, ostensibly to please the SUNY Chancellor. Subordinate SUNY officials (Hart, Hoffman, and Gouger) identified President Macpherson as the person uniquely suited to answer questions concerning the decision to suspend the Wrestling team.
>
> President Macpherson "chaired the policy group (Cabinet)...and often summarized [their] decisions..." In this role, President Macpherson has

---

[1] *See*, ECF No. 53-1 at p. 6 (Asserting that Plaintiff satisfied the *Lederman* standard by showing that Macpherson made the alleged discriminatory/retaliatory decision at issue, and that she therefore "has unique information as to how her decision was reached."); *see also, id.* ("President Mcpherson is the only person who can speak with a comprehensive understanding of the decision to suspend and to issue a press release.").

unique information as to how her decision was reached, according to the very persons assigned to carry out the suspension of the Wrestling team and banish the highly decorated SUNY Brockport stalwart Coach Murray to off-campus duty only, after fifty unblemished years of dedicated service to SUNY Brockport.

President Macpherson is the only person that can speak with a comprehensive understanding of the decision to suspend and to issue a press release.

ECF No. 53-1 at p. 6 (paragraph numbering omitted).

Defendants filed an opposition (ECF No. 60) to the Objections, which maintains that, as argued to Judge Holland, Macpherson has no unique personal information about the suspension of Plaintiff or the wrestling team for alleged violations of Covid-19 protocols or NCAA rules. Defendants assert that the decision was made collectively by the college's Bringing Brockport Back Committee ("BBB") and the Policy Group comprised of members of the President's Cabinet:

The BBB and policy group made decisions collaboratively. While President Macpherson chaired the policy group that met with BBB and often summarized their decisions, President Macpherson was not a subject matter expert on the pandemic or COVID and thus they worked collectively, with individuals taking oversight for their areas and recommending to the policy group the steps the University should take based on the information that it had. The BBB and policy group worked collectively to make the decision, including the decision to temporarily suspend the wrestling team during the course of the investigation into alleged COVID rules violations.

ECF No. 60 at p. 9 (citations omitted).

Defendants further maintain that Judge Holland properly applied *Lederman* to deny Plaintiff's request to depose Macpherson. In that regard, Defendants insist that,

[e]ven if President Macpherson was directly involved in the decision to suspend the wrestling team, that is not an exceptional circumstance which would allow for her deposition. ... [T]he Court rightly determined that other

SUNY Brockport personnel were involved in the meetings and discussions that led to the wrestling team suspension and the report of possible rules violations to the NCAA. Any additional information which Plaintiff seeks can be obtained from these other sources.

*Id.* at 12, 13.

Plaintiff filed a reply (ECF No. 61) which focuses on notes from meetings of SUNY Brockport officials, on September 11, 2020, and September 12, 2020, which, according to Plaintiff, "conclusively undermine Defendants' attempt to manufacture doubt about who made the decision to suspend the Wrestling Team and remove Murray from the campus," purportedly since they "clearly show President Macpherson as the initiator, setting the tone for the BBB meeting, and signaling her strong preference towards suspension prior to discussion with the BBB group, then determining to go "nuclear" on the Wrestling team and Murray." ECF No. 61 at p. 1.[2]   The notes were produced by Defendants after Judge Holland issued the subject Decision and Order.

The Court has carefully considered the record and the parties' submissions.

## DISCUSSION

Plaintiff's objections, to a non-dispositive Decision and Order by a Magistrate Judge, are governed by Fed. R. Civ. P. 72(a), which states:

When a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision. A party may serve and file objections to the order within 14 days after being served with a copy. A party may not assign as error a defect in the order not timely objected to. *The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.*

---

[2] What Macpherson actually reportedly said was that *if* the wrestling program violated NCAA rules, the College might "go nuclear" by reporting it to the NCAA. *See,* ECF No. 61-1 ("If this is an NCAA violation – we are notifying NCAA.  We may be going nuclear on this.").

Fed. R. Civ. P. 72 (emphasis added).

Under this standard, a magistrate's findings should not be set aside as clearly erroneous merely because the district court would have decided those matters differently. *See, Easley v. Cromartie*, 532 U.S. 234, 242, 121 S. Ct. 1452, 1458, 149 L. Ed. 2d 430 (2001) ("In applying this ["clear error"] standard, we, like any reviewing court, will not reverse a lower court's finding of fact simply because we "would have decided the case differently." *Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). Rather, a reviewing court must ask whether, "on the entire evidence," it is "left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948).").

Nor should a magistrate's legal ruling be set aside as contrary to law except where it is contrary to relevant, binding authority. *See Alvarado v. City of New York*, No. 04-CV-2558 RRM VVP, 2009 WL 510813, at *1 (E.D.N.Y. Feb. 27, 2009) ("A magistrate judge's decision is contrary to law only where it runs counter to controlling authority. Consequently, a magistrate judge's order simply cannot be contrary to law when the law itself is unsettled.") (citations and internal quotation marks omitted); *see also, Robert F. v. N. Syracuse Cent. Sch. Dist.*, No. 518CV594LEKATB, 2020 WL 12846935, at *4 (N.D.N.Y. July 21, 2020) ("The Court refuses to conclude that the Magistrate Judge committed clear error or acted contrary to law by not applying non-binding precedent."); *In re Sampedro*, No. 3:18MC47 (JBA), 2019 WL 101902, at *3 (D. Conn. Jan. 3, 2019) ("In the absence of any controlling authority requiring Magistrate Judge Spector to follow the reasoning of *Consorcio Minero* and given the Ruling's consideration of other relevant

cases, the Ruling's differences from the opinion in that case again do not constitute clear error. Respondents essentially argue that Judge Spector should have followed the reasoning and standards of *Consorcio Minero* in considering their request for reciprocal discovery, but they have made no showing that Judge Spector's apparent decision not to do so was beyond the scope of the court's discretion, nor have they shown that it was "clearly erroneous or contrary to law." In the absence of any such showing, this Court cannot set aside the order of a magistrate judge on a nondispositive motion. See Fed. R. Civ. P. 72(a)."), *aff'd sub nom. Sampedro v. Silver Point Cap., L.P.*, 958 F.3d 140 (2d Cir. 2020).

It is well-settled that Rule 72(a)'s "clearly erroneous or contrary to law" standard is deferential to a magistrate judge's ruling,[3] and "[s]uch deference is particularly appropriate where, as here, a party challenges a magistrate judge's resolution of the parties' discovery disputes." *Gallagher v. Unified Ct. Sys. of New York*, No. 3:18-CV-01476, 2022 WL 899509, at *2 (N.D.N.Y. Mar. 25, 2022) (citation omitted; collecting cases).

Additionally, when ruling upon objections raised under Fed. R. Civ. P. 72(a), District Courts typically do not consider evidence or arguments that were not before the magistrate judge. *See, e.g., Intorcia v. City of New York*, No. 24-CV-4837(KAM)(LB), 2025 WL 1220184, at *4 (E.D.N.Y. Apr. 28, 2025) ("In reviewing objections to a magistrate judge's ruling, courts generally do not entertain new legal arguments not presented to the magistrate judge. Courts are similarly confined to the factual record presented to the

---

[3] *See, e.g., Moody v. Starbucks Corp.*, No. 25 CIV. 8739 (PAE), 2026 WL 242233, at *1 (S.D.N.Y. Jan. 29, 2026) ("Under [72(a)'s] highly deferential standard, magistrate judges are afforded broad discretion in resolving nondispositive disputes and reversal is appropriate only if their discretion is abused.") (citation omitted).

magistrate judge while reviewing a magistrate judge's non-dispositive rulings to determine whether they were clearly erroneous or contrary to law.") (citations and internal quotation marks omitted); *see also, Creighton v. City of New York*, No. 12 CIV. 7454 (PGG), 2015 WL 8492754, at *5 (S.D.N.Y. Dec. 9, 2015) ("[C]ourts have held that Rule 72(a) precludes the district court from considering factual evidence that was not presented to the magistrate judge.  Although a district court has the inherent authority to consider further evidence in reviewing rulings on nondispositive matters, such discretion should rarely be exercised in this context, because the district court functionally operates as an appellate tribunal under Rule 72(a).") (citations and internal quotation marks omitted).

With these principles in mind, the Court first finds no merit to Plaintiff's assertion that Judge Holland erred by failing to adhere to Judge Payson's purported "determination" at the October 9, 2024, discovery conference, that Plaintiff could depose Macpherson.[4] Judge Holland observed that the parties were not in complete agreement about what Judge Payson said at the conference, but determined that even if Judge Payson had expected or intended that Mcpherson would be deposed, as seems to have been the case, Judge Holland was not bound to that position, since such a conference is "not a substitute for formal motion practice, and Judge Payson did not issue any order or binding ruling as a result of that conference." ECF No. 52 at p. 8.  Judge Holland further accurately noted that the record before her was more complete than what was before Judge Payson. The Court finds nothing clearly erroneous or contrary to law in Judge Holland's decision to deviate from what Judge Payson said at the conference on October 9, 2024.

---

[4] Objections, ECF No. 53-1 at p. 3, ¶ 11 (Referring to Magistrate Payson's alleged "determination").

Plaintiff's related assertion, that Judge Holland erroneously "adopted Defendant's disingenuous mischaracterization of Magistrate Judge Marion Payson's October 9, 2024 determination" is incorrect, both in asserting that Judge Holland "adopted" Defendants' versions of events, and in asserting that Judge Payson made a "determination" that Plaintiff could depose Macpherson.   The Court similarly finds no merit to Plaintiff's contentions that Judge Holland "ignored evidence" that Macpherson made the decision to suspend the wrestling team, or that she misconstrued Plaintiff's legal arguments. Rather, as discussed further below, Judge Holland denied Plaintiff's motion even assuming *arguendo* that Macpherson did make the decision to suspend the wrestling team, and she accurately construed Plaintiff's arguments.  Plaintiff's objections are denied insofar as they are based on these meritless arguments.

Nor does the Court find merit to Plaintiff's primary contention, that Judge Holland applied the wrong legal standard.  As mentioned earlier, Plaintiff contends that Judge Holland misapplied the applicable *Lederman* standard, by erroneously requiring Plaintiff to show both that Macpherson has "unique first-hand knowledge related to the litigated claims" and that such information "cannot be obtained through other, less burdensome means," when *Lederman* requires only that he show either of those things. *See*, Objections, ECF No. 53-1 at p. 5 (Asserting that Judge Holland "erroneously misconstrued the exception established in *Lederman* to require 'unique first-hand knowledge related to the litigated claims' **and** 'that the necessary information cannot be obtained through other, less burdensome or intrusive means.'") (emphasis in original).

In particular, Plaintiff maintains that Judge Holland erroneously denied the deposition based merely on a finding that the information sought from Macpherson was

available from other sources, as shown by the following statement from Judge Holland's Decision and Order:

> The relevant inquiry is whether the necessary information is "readily discernable from other sources." *Local 2507*, 2025 WL 1719210, at *2. Here, the evidence cited by Plaintiff confirms that other SUNY Brockport personnel were involved in the meetings and discussions that led to the suspension of the wrestling team and the report to the NCAA. Plaintiff has not demonstrated that the information he seeks cannot be obtained from these sources, and thus he has not demonstrated exceptional circumstances as required by *Lederman*.

ECF No. 52 at p. 8.

Plaintiff insists that this analysis is incorrect, and that the *Lederman* standard is satisfied merely by showing that a high-ranking official personally made a decision relevant to the action, *even if the same information could be obtained from other sources.* *See*, Decision and Order, ECF No. 52 at p. 6 (Observing that "Plaintiff argues that he has satisfied the *Lederman* standard because President Mcpherson was 'personally involved' in the action of which he complains.").[5]  For support, Plaintiff cites decisions from other district courts in this Circuit which found that the *Lederman* standard was satisfied where a high-ranking official was personally involved in making a challenged decision.

The Court does not agree that Judge Holland erred in this regard.  Rather, the Court finds that Judge Holland accurately stated and applied the *Lederman* standard, finding that Plaintiff had failed to demonstrate "exceptional circumstances."

It is true, as Plaintiff maintains, that some district court decisions in this Circuit appear to equate mere "personal involvement" with "exceptional circumstances." *See,*

---

[5] Citing to Walsh Declaration, ECF No. 46-1 at ¶ 15 ("A deposition is appropriate here, consistent with Magistrate Judge Payson's recommendation, since President Macpherson was personally involved, unlike the officials in the *Lederman* and *Wyatt* cases cited by Defendants.").

*e.g., Boudouris v. Cnty. of Nassau*, No. CV146719DRHSIL, 2016 WL 4288645, at *1 (E.D.N.Y. Aug. 15, 2016) ("Although a party must demonstrate exceptional circumstances justifying the deposition, courts have allowed such depositions where the government official was personally involved in the events giving rise to the litigation.") (citation and internal quotation marks omitted).

However, the decisions of other district courts are not binding on this Court, and this Court does not believe it would be consistent with *Lederman*'s reasoning to allow a deposition of a high-ranking official, where such official's information was not unique, since it could be obtained from other sources. *See, e.g., In re New York City Policing During Summer 2020 Demonstrations*, 677 F. Supp. 3d 206, 208 (S.D.N.Y. 2023) ("A plaintiff cannot obtain the testimony of a high official merely on the ground that the official was a policymaker. *See Boggs v. Town of Riverhead*, 2020 WL 1929076, at *3 (E.D.N.Y. Apr. 20, 2020) ("The fact that [the head of the agency] was the ultimate decision-maker regarding the alleged policy is not a sufficiently exceptional circumstance to compel a deposition.")"); *Winfield v. City of New York*, No. 15CV05236LTSKHP, 2018 WL 4350246, at *2 (S.D.N.Y. Sept. 12, 2018) ("The deposition of the official who personally made the challenged employment decision was appropriately noticed *because the reasons for the termination decision could not be learned from another source*.") (emphasis added).

The challenged employment decisions in this case were made, during meetings attended by numerous people who can and have attested to what happened, in response to information suggesting that Plaintiff had covertly conducted in-person wrestling practices in violation of SUNY Brockport's Covid-19 protocols and NCAA rules. The record indicates that Macpherson had no information about Plaintiff's alleged misconduct,

other than what was told to her by others who were involved in the meetings. Consequently, to the extent Plaintiff argues that Macpherson has some unique personal information about the matter that could not be obtained from the other meeting participants, such assertion appears entirely speculative.

Accordingly, even assuming *arguendo*, as Judge Holland did, that Macpherson, as the highest ranking person at those meetings, ultimately made the complained-of decisions, the Court finds that it was neither clearly erroneous nor contrary to law for Judge Holland to deny Plaintiff's request to depose Macpherson, based on her finding that Plaintiff failed to demonstrate exceptional circumstances, primarily since Plaintiff "ha[d] not demonstrated that the information he seeks cannot be obtained from" other SUNY Brockport personnel. ECF No. 52 at p. 8 ("Here, the evidence cited by Plaintiff confirms that other SUNY Brockport personnel were involved in the meetings and discussions that led to the suspension of the wrestling team and the report to the NCAA. Plaintiff has not demonstrated that the information he seeks cannot be obtained from these sources, and thus he has not demonstrated exceptional circumstances as required by Lederman.").

Moreover, insofar as Plaintiff relies on the newly-produced meeting notes submitted with his reply papers, taken at meetings on September 11, 2020, and September 12, 2020, the Court declines to consider such information since it was not before Judge Holland when she made her decision. And, in any event, such information adds nothing to the discussion above, since, again, Judge Holland's decision assumed *arguendo* that there was an issue of fact concerning whether Macpherson personally made the complained-of decisions, and since the meeting notes do not suggest that

Macpherson had any unique motivation or factual basis for suspending Plaintiff and the wresting program that is different from what was discussed at the meetings.  Similarly, Plaintiff's counsel's affirmation, submitted with the notes, adds nothing new, since it merely restates the information in the notes and then asserts that the notes show Macpherson's personal *involvement* in making the decisions, without explaining how the notes demonstrate that Macpherson has any *unique* first-hand information about the decisions that would be different than what the other meeting participants have already stated. *See*, ECF No. 61 at p. 6 ("The Swift Notes remove any shadow of a doubt about President Macpherson's intimate and forceful involvement here, clearly justifying the need for her deposition.").

CONCLUSION

For the reasons discussed above, Plaintiff's Objections (ECF No. 53) are denied, and Judge Holland's Decision and Order (ECF No. 52) is affirmed in all respects.

SO ORDERED.

Dated: Rochester, New York
      April 21, 2026

ENTER:

CHARLES J. SIRAGUSA
United States District Judge